Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GARY SCHAEFER, | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1)  Violation of § 14 (a) of the Securities Exchange Act of 1934 |
| MARRONE BIO INNOVATIONS, INC., BOB WOODS, KEVIN HELASH, LARA L. LEE, PAMELA MARRONE, YOGESH MAGO, KEITH MCGOVERN, ZACHARY S. WOCHOCK, and STUART WOOLF, | (2)  Violation of § 20(a) of the Securities Exchange Act of 1934 |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff, Gary Schaefer ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder action against Marrone Bio Innovations, Inc. ("Marrone" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants" collectively with the Company, the "Defendants"),  for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Bioceres Crop Solutions Corp. ("Parent") through merger vehicle BCS Merger Sub, Inc. ("Merger Sub" and collectively with Parent,

"Bioceres")as a result of an unfair process, and to enjoin an upcoming vote on a proposed all stock transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a March 16, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Marrone will become an indirect wholly-owned subsidiary of Bioceres. Marrone public stockholders will receive, in exchange for each share of Marrone stock, 0.088 shares of Bioceres Common Stock.

3.      Thereafter, on May 9, 2022, Marrone filed a Registration Statement on Schedule F4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of other reasons.  Significantly, the Registration Statement describes an insufficient process in which the Board rushed through an inadequate "sales process" in which no special committee of independent and disinterested directors was created to run the sales process.

5.      Notably, the Proposed Transaction appears to be an effort by activist stockholder Ospraie Ag Science LLC ("Ospraie"), which owns or controls approximately 38.9% of the outstanding stock of the Company, and which controls at least two members of the Company Board, including Chairman of the Board Woods.  The Registration Statement reveals that despite engineering a Proposed Transaction that is assured due to the voting bloc of large stockholders and company insiders exceeding 50% of the voting stock of Marrone, no protections were put in place to safeguard minority stockholders' interests.

6.      Further, the Registration Statement contains no disclosure regarding the compensation paid to financial advisor Roth Capital Partners ("Roth") in connection with the performance of their duties, nor is there any discussion regarding the scope of the Roth's engagement.

7.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

8.      In violation of the Exchange Act, on May 9, 2022, Defendants caused to be filed the materially deficient Registration Statement.  The Registration Statement is materially deficient and is thus in violation of the Exchange Act.  As detailed below, the Definitive Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Marrone and Bioceres, provided by Marrone and Bioceres management to the Board's financial advisors Roth and Houlihan Lokey Capital, Inc. ("Houlihan"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Houlihan and provided to the Company and the Board.

9.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

**PARTIES**

10.      Plaintiff is a citizen of Florida and, at all times relevant hereto, has been a Marrone stockholder.

11.      Defendant Marrone discovers, develops, produces, and promotes biological products for pest management, plant nutrition, and plant health in the United States and internationally.  Marrone is incorporated under the laws of the State of Delaware and has its principal place of business at 7780-420 Briar Creek Parkway, Raleigh, NC 27617.  Shares of Marrone common stock are traded on the Nasdaq under the symbol "MBII."

12.    Defendant Bob Woods ("Woods") has been a Director of the Company at all relevant times.  In addition, Woods serves as the Chairman of the board.

13.    Defendant Kevin Helash ("Helash") has been a director of the Company at all relevant times.  In addition, Helash serves as the Company's Chief Executive Officer ("CEO").

14.    Defendant Lara L. Lee ("Lee") has been a director of the Company at all relevant times.

15.    Defendant Pamela Marrone ("Marrone") has been a director of the Company at all relevant times.

16.    Defendant Yogesh Mago ("Mago") has been a director of the Company at all relevant times.

17.    Defendant Keith McGovern ("McGovern") has been a director of the Company at all relevant times.

18.    Defendant Zachary S. Wochok ("Wochok") has been a director of the Company at all relevant times.

19.    Defendant Stuart Woolf ("Woolf") has been a director of the Company at all relevant times.

20.    Defendants identified in ¶¶ 12 - 19 are collectively referred to as the "Individual Defendants."

21.    Defendant Parent together with its subsidiaries, provides crop productivity solutions. Parent was founded in 2001 and is headquartered in Rosario, Argentina. Shares of Parent common stock are traded on the NasdaqGS Stock Exchange under the symbol "BIOX".

22.    Defendants Merger Subs are each a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

23.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to

confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

24.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the New York Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

26.     Marrone discovers, develops, produces, and promotes biological products for pest management, plant nutrition, and plant health in the United States and internationally. Its products include Emergen, Foramin, Foramin ST, Pacesetter, UBP, and UBP ST for increasing crop health, yield, and quality; Grandevo, a bioinsecticide that controls sucking and chewing insects through feeding; Haven, a plant health product to reduce sun stress and dehydration; Jet-Ag and Jet-Oxide peroxyacetic acid sanitizers that prevent, suppress, eliminate, and control algae, fungi, and bacterial diseases in agriculture and horticultural industries; and Majestene, a bionematicide to control soil-dwelling nematodes and certain soil borne insects. The company also offers Regalia and Stargus, which are bio fungicides that protects against fungal and bacterial diseases and enhances yields/quality; Venerate, a bioinsecticide, which controls chewing and sucking insects and mites, as well as flies and plant parasitic nematodes; and Zelto, a bionematicide that protects turf, including golf course fairways and greens, and promotes turf health by enhancing plant and root health. The company provides its products directly through sales force, as well as through

distributors and other commercial partners. The company formerly known as Marrone Organic Innovations, Inc. Marrone Bio Innovations, Inc. was incorporated in 2006 and is headquartered in Davis, California.

27.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance.  For example, in the November 10, 2021 press release reporting the Company's Q3 2021 results, the Company reported a 12% revenue growth alongside an increase in sales of biological fungicides. The Company also highlighted that a stronger mix of higher margin seed treatments led to gross profit of 61.4% in the third quarter, the 12th consecutive quarter of gross margins in excess of 50%.

28.     Speaking on these positive results, CEO Defendant Halesh commented on the Company's positive results as follows, "Our strategy to diversify our offerings of sustainable agricultural solutions globally – particularly with seed treatments – continues to be sound. This has allowed us to grow the business in the face of ongoing drought, input cost pressures and supply chain challenges affecting growers around the world," …... "We continue to expect our product mix will deliver annual gross margins in the upper 50% range, and operating expenses should remain in line with costs in 2020, plus inflation."

29.     These results are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Marrone.  Clearly, based upon these positive results and outlook, the Company is likely to have tremendous future success.

30.     Despite this upward trajectory, the Individual Defendants have caused Marrone to enter into the Proposed Transaction without providing requisite information to Marrone stockholders such as Plaintiff.

***The Flawed Sales Process***

31.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual

Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

32.   The Registration Statement is silent as to whether a committee of the Board composed of disinterested and independent members was created to run the sales process, and if so, their specific powers.

33.   Additionally, the Registration Statement fails to provide adequate information regarding activist stockholder Ospraie Ag Science LLC ("Ospraie"), which owns or controls approximately 38.9% of the outstanding stock of the Company.  Notably, the Registration Statement indicates that Ospraie engineered the entire Proposed Transaction for its own benefit, including initiating contact between the Company and Bioceres and utilizing its own employees, including Chairman of the Board Defendant Woods and Board member Defendant Mago, to push the sales process along.

34.   Consequently, as a result of this lack of independence of the Board from Ospraie *writ large*, it is all the more consequential that no committee of independent and disinterested directors was created to run the sales process.

35.   Adding to the procedural unfairness and impact of Ospraie's control over the sales process, the consummation of the Proposed Transaction is a foregone conclusion, with Ospraie and the next largest stockholder of the Company entering into voting and support agreements locking up approximately 48.9% of the outstanding voting stock in favor of the Proposed Transaction.

36.   In addition, the Board of Directors and Officers of the Company hold collectively an additional 6.6% of the outstanding voting stock of the Company, putting the amount of inside

control voting well over the 50% + 1 vote threshold necessary to consummate the Proposed Transaction.

37.     Despite this, the Proposed Transaction contains no protections for minority stockholders, such as a "Majority of the Minority" vote requirement.

38.     Furthermore, the Proposed Transaction fails to contain a collar mechanism to ensure the merger consideration remains in a realm of reasonableness in the event of a dramatic change in Bioceres' stock price prior to the consummation of the Proposed Transaction.

39.     The Registration Statement also fails to provide adequate reasoning regarding why it was necessary to engage multiple financial advisors, and completely fails to provide adequate information regarding the engagement of Financial Advisor Roth, including the compensation paid to the entity, the scope of the Roth's engagement generally.

40.     Moreover, the Registration Statement is silent as to the nature of any existing confidentiality agreement entered into between the Company and Bioceres and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Registration Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

41.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

42.     On March 16, 2022, Marrone and Bioceres issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **ROSARIO, Argentina and RALEIGH, N.C.,** March 16, 2022 — Bioceres Crop Solutions Corp. (NASDAQ: BIOX) (Bioceres) and Marrone Bio Innovations, Inc.

(NASDAQ: MBII) (MBI) announced today that they have entered into a definitive agreement to combine the companies in an all-stock transaction. Under the terms of the transaction, which has been unanimously approved by the Board of Directors of both companies, each share of MBI common stock will be exchanged at closing for ordinary shares of Bioceres at a fixed ratio of 0.088, representing a value of approximately $236 million, based on the Bioceres and MBI share prices at market close on March 15, 2022 and the number of current outstanding MBI shares.

This transaction will combine Bioceres' expertise in bionutrition and seed care products with MBI's leadership in the development of biological crop protection and plant health solutions, creating a global leader in the development and commercialization of sustainable agricultural solutions. The companies together operate in 46 countries with approximately 640 employees, including two wholly owned manufacturing facilities and research and development (R&D) facilities located in Davis, California, and Rosario, Argentina.

"We are very excited about the value creation that will result from this combination for customers, employees and investors," said Bioceres Chief Executive Officer Federico Trucco. "By combining our current commercialized products and pipelines, we will be in a position to serve all major agriculture input categories with low environmental impact, highly efficacious, biological based solutions."

Trucco added, "MBI's commercial footprint in North America and Europe will strongly complement our existing efforts in these geographies, while Bioceres' leadership in Latin America will provide an excellent channel for MBI's portfolio in these important row-crop markets. Together, we will create a winning platform in one of the most dynamic segments of agriculture."

"Our merger has the potential to accelerate global reach, broaden our product offerings and expand our R&D programs," said Kevin Helash, Chief Executive Officer of Marrone Bio. "Consumer and grower demand is accelerating for agricultural products that help produce safe, affordable food in a sustainable manner. We will be able to further serve that market opportunity and provide our distribution partners and our growers with greater returns on investment." Helash noted that the merger is anticipated to generate $8 million in annual cost synergies, the majority of which relate to the elimination of duplicative public company expenses and consulting fees.

"MBI and Bioceres have a shared culture of innovation and entrepreneurial spirit. With complementary R&D capabilities, the combination unlocks many additional possibilities for further groundbreaking commercial solutions," Helash concluded.

"Bioceres has a proven track record in successfully integrating and scaling up businesses that have cultures focused on the commercialization of innovation. Since we integrated Rizobacter just over five years ago, revenue almost tripled and margins have expanded, driving ~4x increase in EBITDA. Rizobacter had the team,

the products, the industrial capabilities and strong customer relationships needed to materialize growth, and we partnered with their leadership to unlock the opportunity," said Enrique Lopez Lecube, Bioceres' CFO.

"Concurrent with Rizobacter's acquisition, Bioceres negotiated a $45 million long-term loan, today fully repaid, that brought in the financial resources to execute on our ambitious plans. Similarly, today we are announcing that in connection with the merger, we have agreed to terms for up to $45 million in long-term committed capital in the form of a convertible loan. In addition to each company's existing cash position, we estimate that pro forma cash will be around $100 million. Finally, we are also announcing the conversion to equity of 75% of the 2023 convertible loan, with the other 25% restructured into a new 4-year loan," added Lopez Lecube.

"We are excited that the scale created by this combination with Bioceres can accelerate and expand the commercialization of Marrone's existing products. The combined companies will have the quality, experience and depth of management as well as the financial resources to realize the full potential of Marrone's pipeline," said Dwight Anderson, Managing Partner at Ospraie Ag Science LLC, the largest shareholder of MBI.

The combined company will have a diverse customer base, product portfolio and geographic reach across a wide range of crops, positioned to serve the massive market opportunity emerging from the bio-reduction and replacement of chemical ag inputs. Key products in the combined companies' R&D pipelines include Bioceres' HB4 drought tolerance program in wheat and soybeans and MBI's breakthrough research in bioherbicides. Additionally, MBI recently submitted regulatory packages for its novel bioinsecticide/bionematicide products MBI-306 and MBI-206 to the U.S. Environmental Protection Agency and Brazilian authorities for approval, respectively.

**Transaction Details**

The transaction is expected to close in the third quarter of calendar 2022, subject to the approval of MBI shareholders, regulatory clearance and other customary closing conditions. Shareholders representing approximately 49% of MBI's outstanding shares of common stock have entered into customary transaction support agreements, agreeing to vote their shares in favor of the merger agreement and transactions contemplated thereby. Upon close, MBI shareholders will own approximately 16 million shares of Bioceres, with at least two individuals designated by MBI to be appointed to Bioceres' board of directors.

***Potential Conflicts of Interest***

43.    The breakdown of the benefits of the deal indicate that Marrone insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as

Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Marrone.

44.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. Notably, the Registration Statement fails to provide an accounting of the merger consideration which such shares will be exchanged for as follows:

| | Shares Beneficially Owned | |
| Name and Address of Beneficial Owner | Shares (#) | Shares (%) |
|---|---|---|
| **5% Stockholders:** | | |
| Entities affiliated with Ospraie Ag Science LLC[1] | | |
| 437 Madison Avenue, 28th Floor New York, NY 10022 | 70,836,258 | 38.9 |
| Entities affiliated with Ardsley Advisory Partners[2] | | |
| 262 Harbor Drive Stamford, CT 06902 | 18,335,767 | 10.1 |
| **Directors and Named Executive Officers:** | | |
| Kevin Helash[3] | 355,065 | * |
| Lara L. Lee[4] | 112,057 | * |
| Pamela G. Marrone, Ph.D.[5] | 3,809,702 | 2.1 |
| Yogesh Mago[6] | 286,520 | * |
| Keith McGovern[7] | 238,018 | * |
| Zachary S. Wochok, Ph.D.[8] | 397,131 | * |
| Robert A. Woods[9] | 427,277 | * |
| Stuart Woolf[10] | 240,479 | * |
| James B. Boyd[11] | 1,739,032 | * |
| Suping (Sue) Liu Cheung[12] | 105,153 | * |
| Linda V. Moore[13] | 943,460 | * |
| **All current directors and executive officers as a group (14 persons)[14]** | 13,688,260 | 6.6 |

45.     Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. Notably, while the Registration Statement provides

the following accounting, it does not provide the specific amount of merger consideration such options will be exchanged for upon the consummation of the Proposed Transaction:

| | Outstanding RSUs | Vested | Unvested |
|---|---|---|---|
| Robert A. Woods | 438,777 | 396,701 | 42,076 |
| Pamela Marrone | 1,028,341 | 195,007 | 833,334 |
| Zachary Wochok | 416,331 | 374,225 | 42,076 |
| Yogesh Mago | 311,520 | 269,444 | 42,076 |
| Keith McGovern | 263,018 | 220,942 | 42,076 |
| Stuart Woolf | 265,479 | 223,403 | 42,076 |
| Lara L. Lee | 157,187 | 92,613 | 64,574 |

46.    Moreover, certain employment agreements with certain Marrone executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

**Golden Parachute Compensation**

| Named Executive Officer | Cash ($)[1] | Equity ($)[2] | Benefits ($)[3] | Total ($) |
|---|---|---|---|---|
| Kevin Helash | 500,500 | 177,241 | 40,052 | 717,793 |
| Linda V. Moore | 346,720 | 110,052 | 13,672 | 470,444 |

47.    The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

48.    Thus, while the Proposed Transaction is not in the best interests of Marrone, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers

and directors.

**The Materially Misleading and/or Incomplete Registration Statement**

49.    On May 9, 2022, the Marrone Board and Bioceres caused to be filed with the SEC the materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

50.    Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

a.  Adequate information regarding Ospraie's role in the genesis of the Proposed Transaction;

b.  Specific information as to why the inclusion of a "majority-of-the-minority" voting provision in the Proposed Transaction was not required by the Board;

c.  Specific information as to why the inclusion of a collar mechanism in the Proposed Transaction was not required by the Board;

d.  Specific information regarding whether a committee of the Board was created to run the sales process composed of independent and disinterested Directors, and if so, the specific powers of that committee;

e.  Specific information regarding why the Board engaged multiple financial advisors;

f.  Specific information regarding what compensation, if any, was paid or is owed to

Roth for its services as a financial advisor;

g.  Specific information regarding Roth's role;

h.  Whether the confidentiality agreements entered into by the Company with Bioceres differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

i.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Bioceres, would fall away; and

j.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Marrone and Bioceres'*
*Financial Projections*

51.  The Registration Statement fails to provide material information concerning financial projections for Marrone and Bioceres provided by Marrone and Bioceres management to the Board, Roth, and Houlihan and relied upon by Houlihan in its analyses.  The Registration Statement discloses management-prepared financial projections for the Company and Bioceres which are materially misleading.

52.  The Registration Statement should have, but fails to provide, certain information in the projections that Marrone and Bioceres management provided to the Board and Houlihan.

Courts have uniformly stated that "projections ... are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

53.   With regard to the *MBI's management's financial forecasts for MBI* prepared by Marrone Management, the Registration Statement fails to disclose material line items for the following metrics:

a.   Adjusted EBITDAO, including all underlying necessary metrics, adjustments, and assumptions, including specifically: the Definition of EBITDAO utilized, all relevant sub-metrics, and the specific adjustments made.

54.   With regard to the *MBI's management's financial forecasts for BIOX* prepared by Marrone Management, the Registration Statement fails to disclose material line items for the following metrics:

a.   Adjusted EBITDAO, including all underlying necessary metrics, adjustments, and assumptions, including specifically the Definition of EBITDAO utilized, all relevant sub-metrics, and the specific adjustments made.

55.   With regard to the *MBI's management's financial forecasts for the Combined Company* Projections prepared by Marrone Management, the Registration Statement fails to disclose material line items for the following metrics:

a.   Adjusted EBITDAO, including all underlying necessary metrics,

adjustments, and assumptions, including specifically: the Definition of EBITDAO utilized, all relevant sub-metrics, and the specific adjustments made.

56.   The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

57.   In addition, the Registration Statement fails to provide any projection information whatsoever for Bioceres, thus making it impossible for Plaintiff or other public stockholders of Marrone to determine the true value of the Merger Compensation which is composed entirely of Bioceres' stock.

58.   This information is necessary to provide Plaintiff in her capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

59.   Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Houlihan's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Houlihan*

60.   In the Registration Statement, Houlihan describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for,

underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

61. With respect to the *Selected Companies Analysis*, the Registration Statement fails to disclose:

    a.    Regarding the *MBI* section:

        i.    The Enterprise Values for the Company utilized;

        ii.    The multiples, inputs, metrics and assumptions for each company compared.

        iii.    The specific inputs and assumptions used to determine multiple ranges of 2.50x to 4.50x CY 2021 total revenue, 2.00x to 4.00x estimated CY 2022E total revenue, 1.50x to 3.50x estimated CY 2023E total revenue, and 1.00x to 3.00x estimated CY 2024E total revenue; and

        iv.    Marrone's net debt utilized.

    b.    Regarding the *BIOX* section:

        i.    The Enterpise Values for Bioceres utilized;

        ii.    The multiples, inputs, metrics and assumptions for each company compared.

        iii.    The specific inputs and assumptions used to determine multiple ranges of 11.5x to 13.5x estimated FY 2022E Adjusted EBITDAO, 9.5x to 11.5x estimated FY 2023E Adjusted EBITDAO, 8.5x to 10.5x estimated FY 2024E Adjusted EBITDAO, and 7.5x to 9.5x estimated FY 2025E Adjusted EBITDAO; and

        iv.   Bioceres' net debt utilized.

62.    With respect to the *Selected Transactions Analysis* section, the Registration Statement fails to disclose:

    a.   With respect to the analysis conducted in comparison to Marrone:

        i.   The value for each selected transaction compared;

        ii.   The date on which each selected transaction closed;

        iii.   The specific metrics for each selected Transaction;

        iv.   The inputs and assumptions used to determine multiple ranges of 3.00x to 5.00x as applied to the Company's CY 2021 total revenue;

        v.   The implied enterprise value reference range calculated; and

        vi.   The Company's Net Debt.

    b.   With respect to the analysis conducted in comparison to Bioceres:

        i.   The value for each selected transaction compared;

        ii.   The date on which each selected transaction closed;

        iii.   The specific metrics for each selected Transaction;

        iv.   The inputs and assumptions used to determine multiple ranges of 12.0x to 14.0x as applied to Bioceres' FY 2022E Adjusted EBITDAO for the Bioceres;

        v.   The implied enterprise value reference range calculated; and

        vi.   The Bioceres' Net Debt.

63.    With respect to the *Discounted Cash Flow Analysis* section, the Registration Statement fails to disclose:

    a.   With respect to the analysis of Marrone:

i.    The Company's Estimated NOL Tax savings utilized;

ii.   The projected unlevered free cash flows of Marrone;

iii.  The estimated terminal value of Marrone;

iv.   The specific inputs and assumptions used to determine a range of terminal value multiples of 2.00x to 3.00x;

v.    The specific inputs and assumptions used to determine discount rates ranging from 16.00% to 25.00%; and

vi.   The net debt of the Company.

b.   With respect to the analysis of Bioceres:

vii.  The projected unlevered free cash flows of Bioceres;

viii. The estimated terminal value of Bioceres;

ix.   The specific inputs and assumptions used to determine a range of terminal value multiples of 9.00x to 11.00x;

x.    The specific inputs and assumptions used to determine discount rates ranging from 15.00% to 20.00%; and

xi.   The net debt of Bioceres.

64.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

65.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public Marrone stockholder.

As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

66.     Plaintiff repeats all previous allegations as if set forth in full herein.

67.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

68.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

69.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any Registration Statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

70.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

71.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

72.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

73.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

74.     Plaintiff repeats all previous allegations as if set forth in full herein.

75.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

76.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual

Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

77.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Marrone's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

78.     The Individual Defendants acted as controlling persons of Marrone within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Marrone to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Marrone and all of its employees. As alleged above, Marrone is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to comply with the Exchange Act disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: May 16, 2022

**BRODSKY & SMITH**

By: _____

Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*